Argued October 21, affirmed December 16, 1974

TATUM ET AL, *Respondents, v.*
CLACKAMAS COUNTY ET AL, *Appellants.*
529 P2d 393

*Richard F. Crist,* Deputy District Attorney, Oregon City, argued the cause for appellants. With him on the brief was Roger Rook, District Attorney, Oregon City.

*Robert E. Glasgow,* Portland, argued the cause for respondents. With him on the brief were Dusenbery, Martin, Bischoff & Templeton, Portland.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

THORNTON, J.

Defendants Clackamas County and its Board of County Commissioners appeal from a decree enjoining them from implementing or enforcing an initiative ordinance known as "Ballot Measure No. 10, Natural Rivers Measure—Clackamas River Corridor,"[1] adopted by the voters of Clackamas County at the general

---

[1] The ordinance would zone an area of land lying generally adjacent to both sides of the Clackamas River between Carver, Oregon, and Estacada, Oregon. The legal description of the proposed scenic zone appears to be fatally defective in that the point of beginning and the point where the eastern boundary line of the proposed zone crosses the Clackamas River do not make reference to fixed and definite geographical points. The zoning plan would

election of November 7, 1972. The trial court held that the people of Clackamas County have no authority to adopt zoning legislation by the initiative process; that even if such authority existed, the procedural requirements of ORS ch 215 were not complied with in the adoption of the ballot measure; and that the initiative ordinance and the temporary rules and regulations adopted pursuant to the ballot measure were invalid.

The primary issue before us is whether the voters of Clackamas County, a non-home rule county, have the authority to adopt the subject ordinance by the initiative process.

In support of their contention that the initiative measure is valid, defendants argue that the subject ordinance is "local" legislation within the meaning of Art IV, § 1 (5) of the Oregon Constitution, and that the ordinance may properly be enacted by the people of Clackamas County by the initiative process.

From our review of the constitutional and statutory provisions dealing with this question, and prior decisions of our Supreme Court, we reach the conclusion that defendants' contentions cannot be sustained, and consequently that the lower court did not err in its decision.

restrict the uses of that land to residential, farm and outdoor recreation. The construction of roads, railroads and utilities would be restricted as well as the conduct of commercial logging operations. The erection or placement of condominiums, apartments, trailer parks or mobile home parks would be prohibited in the zoned area. Also prohibited would be the erection or placement of certain commercial and industrial structures or buildings. The construction of dams, reservoirs, revetments and other water impoundment or diversion facilities would be prohibited. The ordinance would also regulate the hunting, killing or trapping of animals or birds within the affected area.

The relevant portion of Art IV, § 1 (5), provides:

"The initiative and referendum powers reserved to the people by subsections (2) and (3) of this section are further reserved to the qualified voters of each municipality and district as to all local, special and municipal legislation of every character in or for their municipality or district. The manner of exercising those powers shall be provided by general laws * * *."

It is of course true that the initiative and referendum powers are reserved to the voters of all counties by the above-quoted provision of the Oregon Constitution. It is also true that a county is a "district" within the meaning of Art IV, § 1 (5). *State v. Mack,* 134 Or 67, 292 P 306 (1930); *Briggs v. Stevens,* 119 Or 138, 248 P 169 (1926); *Schubel v. Olcott,* 60 Or 503, 120 P 375 (1912). However, this constitutional provision is not self-executing. In order to determine whether any "district" may in fact exercise that power we must find additional legislative authority to do so. In other words, a proper determination of the issue before us requires that we analyze how, to what degree and on what subject matter voters of a non-home rule county may exercise that power.

It is well settled in this state that no "district" may enact a measure by the initiative process under Art IV, § 1 (5) (formerly Art IV, § 1a), except pursuant to some additional grant of power, either by virtue of a charter or by a specific statute. *State v. Port of Astoria,* 79 Or 1, 154 P 399 (1916); *Rose v. Port of Portland,* 82 Or 541, 162 P 498 (1917); *Barber v. Johnson,* 86 Or 390, 167 P 800, 1183 (1917); *Carriker v. Lake County,* 89 Or 240, 171 P 407, 173 P 573 (1918); *Hansell v. Douglass,* 234 Or 315, 380 P2d 977 (1963). Applying the same principles fol-

lowed in these cases, we must find a specific legislative grant to regulate land use by the initiative in order for the ballot measure in the instant case to be valid.

Defendants argue that the legislature has, indeed, made a specific authorization to the people of any county to use the initiative procedure to adopt land use and zoning ordinances; that not only is the county governing body authorized to adopt land use regulations, but also the legislature has specifically granted to the voters of each county the power to initiate ordinances on the same subject matter.

We first consider defendants' contention that the legislature has expressly authorized the voters of all counties to initiate ordinances regulating land use. Defendants cite ORS 215.130 (1), which provides:

> "Any ordinance adopted under ORS 215.010 to 215.190 and 215.402 to 215.422 shall be a *local* law within the meaning of, and subject to, ORS 254.-310." (Emphasis supplied.),

and ORS 254.310, the pertinent portion of which provides:

> "The people of every county are authorized to enact, amend or repeal all *local* laws for their county by the initiative and referendum process * * *." (Emphasis supplied.),

as supportive of their position. Defendants argue that because ORS 215.130 (1) defines all zoning ordinances as local, and that because ORS 254.310 provides that the people of every county can utilize the initiative process for all local laws, Ballot Measure No. 10 was properly adopted by the citizens of Clackamas County, pursuant to an express legislative authorization.

In order to properly evaluate defendants' arguments it is necessary that we first analyze ORS ch 215.

■ We begin with the well-established rule that a statute is to be construed as a whole, *State v. Popiel,* 216 Or 140, 337 P2d 303 (1959), and that effect must be given to the over-all policy which the entire statute was intended to accomplish. *Wimer v. Miller,* 235 Or 25, 383 P2d 1005 (1963).

■ ORS ch 215 is an organic act authorizing any county in Oregon to undertake land use planning and zoning. The act spells out in great detail the steps a county must follow if it wishes to avail itself of this legislative grant of power:

ORS 215.020 through 215.100 provide for the governing body of the county to establish a planning commission, which must adopt a comprehensive plan for land use and zoning. Also included in these sections are statutory standards upon which the planning commission is to make its decisions, as well as certain procedural requirements such as public notice and hearings.

ORS 215.110 (1) provides for the planning commission to recommend to the governing body ordinances to accomplish the comprehensive plan. ORS 215.110 (3) sets forth the manner in which the county governing body may enact zoning ordinances. The governing body may enact ordinances recommended by the planning commission, or ordinances initiated by itself, provided it first requests a report and recommendation from the planning commission. ORS 215.-110 (2) also provides for a governing body to adopt ordinances renaming streets, numbering property and controlling subdivisions of land.

Other provisions include authorization for interim zoning ordinances, agricultural land use zoning, review procedures and a host of other matters.

From the foregoing analysis it is apparent that the grant of power to promulgate zoning and land use regulating ordinances is to the county governing body, and is closely limited in its terms. The procedure for adopting such ordinances is as specifically set forth in ORS ch 215. *See, Fasano v. Washington Co. Comm.,* 264 Or 574, 507 P2d 23 (1973). Thus the legislative grant is not general in its application but is restrictive and carefully conditioned.

■ Defendant's reliance upon ORS 215.130 (1), quoted above, is misplaced. By its express terms, that section is limited in its application to: "Any ordinance *adopted* under ORS 215.010 to * * *." (Emphasis supplied.) By the use of such language the legislature has indicated that this provision is limited to ordinances already adopted by the county's governing body. This evidence of legislative intent is further strengthened by an express authorization to county governing bodies, at their option, to refer to the voters of the county any ordinance or amendment to an ordinance for their approval or rejection. ORS 215.-110 (4). By terming such an ordinance a "local law," the legislature has simply indicated that ordinances adopted pursuant to ORS ch 215 shall be deemed "local" and therefore subject to popular referendum as provided in ORS 254.310. This does not authorize the voters to adopt zoning ordinances by initiative. Nor does the language of ORS 254.310 authorize the voters to enact land use regulating ordinances by the initiative process as argued by defendants. As our Supreme Court held in *Kosydar v. Collins, County*

*Clerk,* 201 Or 271, 270 P2d 132 (1954), in construing the ancestor statute⑧ of ORS 254.310, this statute only provides the mechanics for exercising initiative and referendum powers granted elsewhere. The court said:

> "It is evident that no powers were granted to the people by this statute—the constitution had already reserved such powers to them—but the act did provide for the manner of exercising them * * *." 201 Or at 279.

Lastly, we find nothing in ORS 215.110 (3),⑨ also relied upon by defendants, that supports their contention. This section deals entirely with the authority of the county governing body to enact, amend or repeal ordinances recommended by the planning commission. Nothing in this section can be construed as authorizing the voters to initiate an ordinance outside the procedure prescribed by ORS ch 215. Likewise the initiative powers reserved to the people by Art IV, § 1 (5) of the Oregon Constitution cannot attach to such a limited grant of authority.

---

⑧ General Laws of Oregon 1919, ch 251, § 1, p 374, provides:

"The people of every county are hereby authorized to enact, amend or repeal all local laws for their county by initiative and referendum process. The method of procedure in the use by the people of any county of these powers is provided by sections 3470 to 3485 of Lord's Oregon laws, and amendments thereof, making effective the initiative and referendum powers reserved to the people by sections 1 and 1-a of article IV of the constitution."

⑨ ORS 215.110 (3) provides:

"The governing body may enact, amend or repeal ordinances recommended by authority of this section, together with whatever amendments it believes the public interest requires. The governing body may also enact, amend or repeal with reference to any subject mentioned in subsection (1) of this section, an ordinance on which the governing body initiates action, provided that it first requests from the com-

Summarizing then, nowhere in ORS ch 215, or elsewhere, do we find any grant of authority to the voters of a county to adopt a zoning ordinance by the initiative process, shortcutting all of the requirements and safeguards provided by ORS 215.010 to 215.422, which we have previously summarized.

A similar question arose in Deschutes County (also a non-home rule county) in 1966. The voters of the county purported to adopt an anti-zoning "initiative measure" containing among others the following provision:

> " ' "* * * All zoning ordinances or amendments to zoning ordinances will originate by petition from, and vote thereon by, the persons affected by such proposed ordinance or amendment as provided by law and not otherwise * * *." ' " 33 Op Att'y Gen 481 (Or 1968).

The validity of the above measure was questioned and the local district attorney presented the issue to the Attorney General's office for decision. After an exhaustive examination of the Oregon authorities, including the decisions previously referred to earlier in this opinion, the Attorney General said:

> "It is our opinion that under the doctrine of Rose v. Port of Portland [82 Or 541, 162 P 498

mission a report and recommendation regarding the ordinance and allows a reasonable time for submission of the report and recommendation. The governing body may also enact, amend or repeal with reference to any subject mentioned in subsection (2) of this section, an ordinance on which the governing body initiates action, regardless of whether the county has a planning commission; provided that, in the event the county has a planning commission, the governing body first requests from the commission a report and recommendation regarding the ordinance and allows a reasonable time for submission of the report and recommendation."

(1917)], Barber v. Johnson [86 Or 390, 167 P 800, 1183 (1917)] and Carriker v. Lake County, supra [89 Or 240, 171 P 407, 173 P 573 (1918)], as reaffirmed in Hansell v. Douglass, supra [234 Or 315, 380 P2d 977 (1963)], the people of Deschutes County had no authority to enact an initiative measure which would prohibit the county court from adopting zoning or subdivision ordinances, inasmuch as authority has not been granted by law for the enactment of such an initiative measure * * *." 33 Op Att'y Gen at 485.

For the above reasons we hold that the voters of Clackamas County, a non-home rule county, do not have the authority to adopt zoning and land use regulating ordinances by the initiative process. We, therefore, do not reach any of the other issues raised by the parties. Likewise we express no opinion on whether voters of chartered counties may exercise the initiative power to adopt a measure such as is involved here.

Affirmed.

LANGTRY, J., specially concurring.

I do not agree with the interpretation of ORS 215.130 (1) and 254.310 which either ignores or construes out of existence a part of ORS 254.310.

ORS 215.130 (1), which is a part of the county planning and zoning law, provides:

"Any ordinance adopted under ORS 215.010 to 215.190 and 215.402 to 215.422 shall be a local law *within the meaning of, and subject to,* ORS 254.-310." (Emphasis supplied.)

ORS 254.310 provides:

"The people of every county are authorized to *enact,* amend or repeal all local laws for their

county *by the initiative* and referendum process * * *." (Emphasis supplied.)

The majority argues that the legislature, by using the word "adopted" in ORS 215.130 (1), quoted above, indicated that the reference to the initiative process limited it to planning and zoning ordinances already adopted by the county's governing body. If this be so, it seems to me that we have construed out of existence the word "enact" in ORS 254.310. If the legislature wants to make such a change in the county zoning laws, it may do so; we should not, however, attempt to do so.

It is obvious that, if we give effect to the plain words of the two statutes, no opportunity for a hearing of any kind is given to affected property owners in a case like that at bar. Possibly, also, the value of some property may be taken without just compensation. Serious constitutional questions are thus raised. If we can avoid possible constitutional validity questions concerning a statute, we should do so, thus giving the legislature an opportunity to remedy the statute if that be the policy it decides upon. A way to avoid the constitutional question is presented by the initiative measure in this case.

The land included in the zoning initiative was described in the ordinance which is a part of the record. It commenced:

"BEGINNING AT A POINT 300 YARDS EASTERLY FROM SETTLEMENT OF CARVER, BEING WITHIN THE CARVER TO ESTACADA HIGHWAY, THENCE DUE SOUTH CROSSING CLACKAMAS RIVER TO CARVER TO SPRINGWATER RD. * * *"

Mr. Hall, the Clackamas County Planning Director, testified:

> "* * * [W]e were unable to find a place known as the settlement of Carver. That is, Carver is an area but a given point on the ground from which to start it from, we could not do it * * *."

The planning staff arbitrarily picked a point at the middle of a bridge in the unincorporated area known as Carver when it attempted to make a map of the included area. With reference to the closing of the included land description Mr. Hall testified:

> "Directions within the Ballot Measure again on this point were vague and as a result, we had to take it back to where it began * * *."

Additionally, the description was vague about a "northeasterly" line from a Springwater Highway to and across Clackamas River and a railroad right of way.

The evidence indicates that much valuable land, including forest, sand and gravel establishments and agricultural land, is affected by the ordinance, and land use changes are required. Obviously, the vague description may be expected to give rise to endless litigation. The vagueness of the description thus gives rise to the question of the validity of the entire initiative.

*State v. Hodges,* 254 Or 21, 457 P2d 491 (1969), is a case in which the Supreme Court of Oregon declared a penal statute void for vagueness. A statement therein is applicable as well where constitutionally protected property rights are at stake:

> "In addition to its due-process function of putting persons on notice of the law's demands, rea-

sonable certainty serves a second purpose: adjudication * * *.

"A law that is too vague for reasonable adjudication is bad on two grounds. A vague statute lends itself to an unconstitutional delegation of legislative power to the judge and jury, and, by permitting the jury to decide what the law will be, it offends the principle, if not the rule, against *ex post facto* laws. See Oregon Constitution, Art I, § 21." 254 Or at 27.

Because it is impossible to ascertain the land included in the zone (a thing which could have been but was not accomplished by the initiative promoters), I would hold the entire ordinance void for vagueness. I concur in the result.