Argued April 2, affirmed April 10, 1968

CITY OF TUALATIN, *Respondent, v.*
CITY OF DURHAM, *Appellant.*

439 P. 2d 624

*Cleveland C. Cory,* Portland, argued the cause for appellant. With him on the briefs were Stanley R. Church, Lake Oswego, and Davies, Biggs, Strayer, Stoel and Boley, Portland.

*DeMar L. Batchelor,* Hillsboro, argued the cause for respondent. With him on the brief were Schwenn, Bradley & Batchelor, Hillsboro.

Before PERRY, Chief Justice, and SLOAN, O'CONNELL, GOODWIN, DENECKE, HOLMAN and LANGTRY, Justices.

LANGTRY, J. (Pro Tempore).

The transcript and exhibits indicate that this case is part of a continuing controversy involving the cities of Tualatin and Durham and some residents of the surrounding area in Washington County, over expansion of city limits. The cities are small. (The current Oregon Blue Book lists Tualatin's population as 462 and Durham's as 240.) Tualatin was incorporated in 1913. In recent years it annexed territory, some of which it zoned industrial to the vexation of some adjacent non-city residential landowners. The latter joined in 1966 to incorporate the new city of Durham, primarily to block Tualatin from further such expansion in their area.

This is a declaratory judgment suit by Tualatin and a cross-complaint by Durham, the combined prayers of which test the validity of two attempted annexations by Tualatin and one by Durham.

By a council Resolution dated July 25, 1966, Tualatin accepted a "Consent and Request" for annexation of what will be termed Tract 1, signed by a substantial number of the tract's residents. A special annexation election was called by the Resolution for August

26, 1966. The resolution and other proceedings complied with ORS 222.111 through 222.190, which embody city annexation procedures required by state law for these cities. A metes and bounds description of Tract 1 was a part of the Consent and Request, which in turn was made a part of the Resolution. It showed the tract to be contiguous to existing Tualatin boundaries, which is required by ORS 222.111(1). Interstate 5 freeway and the Tualatin River lie between the boundaries of Tualatin and the rest of Tract 1, so that inclusion of the intervening fragment of the freeway is essential for contiguity. The fragment was part of the Consent and Request description of Tract 1, but was omitted from the description in the posted and published notices of the election required by ORS 222.130. It was included in Tualatin Ordinance No. 93, passed on September 13, 1966, which declared the area annexed. This was not a failure to give notice. It was a defect in the notice given, not substantial in character.

The vote in the city was 42 to 1, and in Tract 1, 20 to 7, favoring annexation.

On July 29, 1966, four days after Tualatin's initial resolution, Durham started proceedings to annex Tract 2, consisting of territory contiguous to Durham's boundaries which included the same freeway fragment that was in Tract 1. As in the Tualatin annexation of Tract 1, this fragment is a necessary link if the boundary of Durham is to be contiguous with Tract 2. The balance of Tract 2 is different than the balance of Tract 1, and the balance of each is the substantial territory each respectively wants to annex. Durham's attempted annexation was completed by Ordinance No. 7, passed September 12, 1966. No election was required because over two-thirds of the residents of the popu-

lated area of Tract 2 consented to annexation. ORS 222.170.

On September 13, 1966, Tualatin annexed another separate tract by Ordinance No. 94. (Here referred to as Tract 3.) It is contiguous to Tualatin only if Tract 1 was validly annexed. The Tract 3 proceeding was started by a Resolution dated August 3, 1966. The vote for annexation was 46 to 0 in the city and 2 to 0 in Tract 3.

The circuit court held that Tualatin's proceeding as to Tract 1 was first in time, giving it exclusive jurisdiction in the overlapped freeway fragment area to the exclusion of Durham. It also held that Durham's challenge of Tualatin's proceedings is collateral and Durham is not a proper party.

Without ruling upon the latter question, this opinion will examine the merits of the controversy.

■ The city "which first institutes proceedings acquires exclusive jurisdiction of the subject area and may proceed to final conclusion unfettered by subsequent proceedings" of the other. *Landis v. City of Roseburg,* 243 Or 44, 48-49, 411 P2d 282 (1966). Tualatin instituted the first proceedings by its Resolution of July 25, 1966.

■ Counsel for Durham contends the omission of the fragment in the election notice voided the entire Tualatin Tract 1 proceeding. We do not agree. The original Consent and Request and Resolution contained the complete description. The Resolution is not challenged and it is valid. The election notice is based on the Resolution. If the notice is fatally defective, that would void the election but not the Resolution. It remains extant and another complete election could proceed thereunder, if necessary.

■ The remaining question is whether the omission of the freeway fragment from the election notices voided the Tract 1 election.

Obviously, no voters resided in the freeway fragment, so none such were misled by the defective notice. The state owns the freeway, and it has made no protest. The appellant produced no witness to testify or evidence that any voters otherwise were misled. It is highly improbable that the result of the election was in the least affected by the omission.

Mr. Justice BRAND, in an exhaustive opinion in *Witham v. McNutt et al,* 186 Or 668, 208 P2d 459 (1949), reviewed numerous previous decisions of this court, some apparently conflicting, that seem to support five rule variations ranging from very strict to liberal, as to whether irregularities in notices of special elections void the elections. *Witham* involved an omission to post properly one of the four required notices in a City of Eugene annexation election. After the review mentioned, in which Mr. Justice BRAND noted that there is ground for reconciliation of most of the decisions one with another, *Witham* adopted a "substantial compliance" rule, with which the court unanimously agreed. When the question is properly presented, application of the rule involves a judicial scrutiny of the election results. The contestant has the burden of proving by a preponderance of the evidence that it is reasonable to believe that the result of the election might have been changed had there been strict compliance. If the evidence presented by the contestant does not reasonably lead to such a conclusion, and the record shows the error did not substantially depart from the statutory requirements, the election is not invalidated by the error.

*Witham* ended whatever confusion previously ex-

isted as to the effect of such irregularities. Its rule is clearly the law of this state. It has been cited with uniform approval in our decisions since 1949. *School Dist. 16-R v. McCormmach,* 238 Or 51, 392 P2d 1019 (1964); *Hansell v. Douglass,* 234 Or 315, 380 P2d 977 (1963); *Skoko v. Clackamas R.F.P. Dist. No. 71,* 234 Or 214, 380 P2d 809 (1963); *Peterkort v. County Zoning District,* 211 Or 188, 313 P2d 773, 314 P2d 912 (1957); *School District No. 17 v. Powell,* 203 Or 168, 279 P2d 492 (1955).

As noted above, examination of the transcript of evidence shows that it is highly improbable that the annexation election for Tract 1 was in the least affected by the inconsequential omission in the election notice description. Accordingly, Tualatin's annexations of Tracts 1 and 3 are valid, and Durham's annexation of Tract 2 is invalid.

The decree is affirmed.