Argued August 20, affirmed September 14, 1973

EUSTACE ET AL, *Respondents, v.*
SPECKHART ET AL (No. 21975), *Appellants.*
514 P2d 65

*Charles R. Cater,* La Grande, argued the cause for appellants. With him on the briefs was Michael V. Johnson, La Grande.

*Carl G. Helm,* La Grande, argued the cause for respondents. With him on the brief were Helm, Wasley & Monce, La Grande.

Before LANGTRY, Presiding Judge, and FOLEY and THORNTON, Judges.

LANGTRY, J.

The Board of Directors of Union County School District No. 1 brought this proceeding under ORS 33.710 to 33.720 to obtain a court decree validating a school bond election. The special election was held on October 24, 1972 and a $6.2 million bond issue was approved by a vote of 1,938 to 1,686. Nineteen respondents filed an answer in the proceeding, contesting the validity of the election. After a trial on the merits the court entered an order validating the election and respondents have appealed therefrom. The only contentions meriting discussion are (1) that the last published notice of the election was defective by reason of being two days premature; (2) that petitioners circulated misleading and inaccurate statements concerning the bond issue; and (3) that the school board illegally spent district funds to influence a favorable vote; and each of these things invalidated the election.

█ Preliminary to consideration of these contentions we note that the school district contends that, because there was no evidence to support respondents' standing, their challenge of the election must fail. None of the respondents took the witness stand. There was no evidence supporting their allegation that they were citizens and taxpayers in the district. However, petitioners did not at any time challenge respondents' standing; and the trial court specifically held that, in view of the lack of evidence on the subject and petitioners' waiver of right to object in that respect, it found that respondents did have standing. This finding by the trial court leads us to decline to consider petitioners' objection in this regard at this late date.

██ ██ ORS 331.010 provides that in all school district special elections a newspaper notice thereof

"shall be published in at least two issues," the last of which "shall be not more than 14 days nor less than eight days preceding the election." It is not denied that the notice was published in "two issues" of the newspaper. If we assume that a printing and distribution of the newspaper 16 days before the election is a publication of that newspaper only on the same 16th day, we have need to consider the merits of the respondents' claims which they have raised.[1] We do not accept this premise for the reasons stated in the footnote; however, we will briefly discuss the other merits of the question in the case at bar because that is the basis upon which it has been argued to us. Further, there is no evidence in the record showing the manner in which the newspaper was circulated after printing so a determination could be made of how long it was published.

We note that it was proved that in every other respect the notices required by statute were complied with and news media were extensively used to discuss

---

[1] Black's Law Dictionary 1397 (4th ed 1951) defines "publish," *inter alia*, as: "To make public; to circulate; to make known to people in general." Printing a newspaper is not the same as publishing it. If the legislature had intended to be as restrictive as respondents contend it was, it could have said "printed and published" instead of "published." Query: If a notice is printed and circulated 16 days before an election, and is still being circulated two days later, is it not still being "published" 14 days before the election? In Matter of the application of Douglass, 58 Barb 174, 176 (NY 1870), it was held that a notice that must be " 'published at least two days' " means that at least two days shall elapse between publication and the event; not that the notice shall be twice published. In State v. Grey, 21 Nev 378, 380-81, 32 P 190, 191, 19 LRA 134 (1893), where it was required that certain amendments must be published "for three months next preceding the election," a printing and issuing of the amendments 16 to 18 months before the election was held to fulfill the requirement. *See also* Provident Land Corporation v. Provident Irr. Dist., 94 P2d 83, 84 (Cal App 1939); and Lindley v. Citizens National Bank, 108 SC 372, 94 SE 874 (1918).

the upcoming bond election in such a manner that any citizen paying attention to the normal course of public affairs in the community must have been informed in all respects about the election. There was no evidence to the contrary.

Respondents place their sole reliance under this contention upon the decision in *In Re Board of Directors of North Unit Irr. Dist., Gard v. Peck*, 91 Or 33, 178 P 186 (1919), which involved a validating proceeding for an election that authorized the issuance of bonds by an irrigation district. The election was declared invalid by the Supreme Court because a notice of election was posted for one day less than that required by the statute. As we have indicated in the footnote, the situation in *North Unit* is distinguishable from that in the instant case.

■ In *Witham v. McNutt et al.*, 186 Or 668, 694, 208 P2d 459 (1949), the Supreme Court in distinguishing *North Unit* stated that the decision there "stands alone." *Witham* sought to lay at rest previous apparently conflicting decisions concerning the subject matter here under consideration. In *City of Tualatin v. City of Durham*, 249 Or 536, 439 P2d 624 (1968), the Oregon Supreme Court noted that *Witham* had accomplished that end; and since then it has uniformly been held that if the notice requirements of a statute providing for the calling of a special election are substantially complied with, and there is an affirmative vote upon the proposition submitted, the election will not be disturbed for insubstantial technical reasons. The Supreme Court there said:

> "*Witham* ended whatever confusion previously existed as to the effect of such irregularities. Its rule is clearly the law of this state. It has been

cited with uniform approval in our decisions since 1949. [Citing five cases.]" 249 Or at 540-41.

We are satisfied that this line of authority disposes of respondents' first contention on the theory raised in the trial court.

■■ ■■ This issue[2] revolves around a statement contained in an information sheet that petitioners distributed to the public prior to the election:

"2. How much will this cost the taxpayer?
"If interest rates on 20-year bonds are 5%, it will cost $5.03 per $1,000 true cash value."

There was evidence that some distributed duplications of this statement bore the figure $1.000 instead of $1,000. The trial court found that

"* * * [t]he statement was not a misleading statement, and nothing in the statement would lead a person of ordinary intelligence to believe other than that his property would be charged with the sum of $5.03 per $1,000.00 of true cash value equally over a period of twenty years on an annual basis * * *."

Respondents contend that the trial court erred

------

[2] We recognize a question exists about whether this second issue raised by respondents was properly before the court.

ORS 33.710 to 33.720 do not specify what questions shall be considered in a validation proceeding beyond authorizing the court to examine the "regularity and legality" of the proceeding.

ORS 251.025 authorizes election contests on certain grounds "and no other." ORS 251.045 sets a 10-day deadline for bringing such an election contest and we have held that the 10-day limit is jurisdictional. Bagley v. Beaverton School District, 12 Or App 377, 507 P2d 39 (1973). There is no time limit for bringing validation proceedings under ORS 33.710. We do not here resolve any questions raised by this configuration of the statutes because the trial court's result was reached on the merits, and we think that it was so clearly correct that any other question should be left for determination in an appropriate case.

in this respect. While the evidence supports the trial court's finding we need not consider this point.

ORS 260.532 (1) provides:

> "No person shall write, print, publish, post or circulate * * * any letter, circular, bill, placard, poster or other publication * * * knowing such letter, circular, bill, placard, poster, publication or advertisement to contain any false statement of material fact relating to any * * * measure."

The Supreme Court in discussing the meaning of the predecessor to the above statute which contained similar language (former ORS 260.380 (1)) said:

> "Statements are not false as that word is used in the Corrupt Practices Act if any reasonable inference of opinion or of correct fact can be drawn therefrom. Similarly, it is not necessary that the opinions expressed or reasonably inferred be well founded. If reasonableness were the test, the courts would become censors of political campaigns and would be called upon to judge the reasonableness of all campaign statements and the possible inferences to be drawn therefrom. Courts are, and should be, most reluctant to interfere in the political process and will not do so unless compelled by a clear legislative directive * * *." *Thornton v. Johnson*, 253 Or 342, 362, 453 P2d 178, 454 P2d 647 (1969).

There is nothing to indicate that the challenged statement is a false statement within the meaning of ORS 260.532 (1). It is inaccurate in that the person who made the calculation upon which it was based made an inadvertent mistake, and the cost per $1,000 of true cash value should have read $4.06 instead of $5.03. We do not see how respondents' asserted interests could have been prejudiced by this error.

■ ■ Respondents assert that petitioners illegally spent public funds to influence a favorable vote, and

that this invalidated the election. Petitioner school board appropriated $100 toward the cost of a one-day workshop conducted by a public relations consulting firm with respect to the promotion of the bond issue.

If this expenditure was illegal, the board members may be liable to repay the amount spent. *Porter r. Tiffany,* 11 Or App 542, 502 P2d 1385 (1972), Sup Ct *review denied* (1973). It is not ground for invalidating the results of the election.

We find no error.

Affirmed.